# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3351 | **DATE** | 10/11/2002 |
| **CASE TITLE** | TERESA POLK-HENDERSON vs. IL NURSES ASSOCIATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Motion (13-1) for summary judgment is denied.**
(11) ■ [For further detail see order attached to the original minute order.]

Docketing to mail notices.
OCT 16 2002 date docketed
Document Number: 23
courtroom deputy's initials: DW

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
OCT 16 2002

TERESA POLK-HENDERSON,

Plaintiff,

v.

ILLINOIS NURSES ASSOCIATION,

Defendant.

No. 00 C 3351
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Teresa Polk-Henderson is suing her former employer, the Illinois Nurses Association ("INA"), alleging racial discrimination and retaliatory discharge in violation of Title VII and 42 U.S.C. § 1981. INA has moved for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992). Put another way, "where the undisputed facts demonstrate that one party is entitled to judgment as a matter of law, summary judgment in favor of that party is entirely appropriate." *Collins v. American Optometric Association*, 693 F.2d 636, 639 (7th Cir. 1982). The question is thus "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

I accept the following facts as true for the purposes of considering defendant's summary judgment motion. Sometime during the summer of 1997, Polk-Henderson, an African-American woman, applied for and was subsequently hired for the position of Associate Director/Labor

23

Relations Specialist with the INA, a union for registered nurses and a multi-professional association. INA assigned Polk-Henderson to locals at the University of Illinois ("UIC") and St. Joseph Hospital, and her duties included direct participation and consultation with local units in several labor relations activities (e.g., negotiations, contract administration, grievances, arbitration, and strikes); providing leadership in organizing new bargaining units; preparing written materials for correspondence and distribution; assisting local units in organizing, administering activities, setting goals, maintaining a strategic plan, and developing leaders; and participating in INA's regular staff meetings. While working with her assigned locals, plaintiff experienced several incidents which she believes constituted racial discrimination. At St. Joseph, white officers of the local were antagonistic towards her, "made fun" of her, and spoke racial epithets about African-Americans in her presence. At UIC, plaintiff claims that the local was divided into "racially divided factions" and that members were "perpetrating racism" against one another. Beginning in April of 1998, Polk-Henderson began complaining to Gay Hayward, her immediate supervisor, and eventually Wyleene Cottrell, Hayward's supervisor, about these situations.

In August of 1998, INA hired Maria Soma, an Asian-American woman, for the position of Staff Specialist/Labor Relations. Both Soma and Polk-Henderson were hired at the "third step" of the INA salary schedule based on their respective qualifications and experience. At some point during the course of her employment, plaintiff complained to INA officials that she was being treated less favorably than other staff specialists by not being given the training, orientation, and mentoring available to others, including Soma. Furthermore, despite being hired at the same step on the salary schedule as Polk-Henderson, Soma briefly earned a higher salary

2

than Polk-Henderson due to the fact that Polk-Henderson's yearly raise was delayed. Polk-Henderson did not receive this yearly raise until after she filed and won a grievance.

Throughout the course of her employment, Polk-Henderson met regularly with her supervisor, Gay Hayward, to discuss her job performance and improvement. In March of 1998, INA received at least two complaints from union members regarding Polk-Henderson's job performance. However, INA evaluated her performance on three occasions and on each occasion, plaintiff's ratings were positive. The first evaluation on August 29, 1997 indicates that Polk-Henderson received one score of 4.5, six 4.0s, eleven 3.5s, twelve 3.0s, and one 2.5 out of 31 scored criterion.[1] The October 8, 1997 evaluation indicates that Polk-Henderson received twenty-two 4.0s, seventeen 3.5s, eight 3.0s, and one 2.5 out of 47 scored criterion. Finally, the September 16, 1998 evaluation indicates five 4.0s, eighteen 3.5s, seventeen 3.0s, and two 2.5s out of forty-two scored criterion and written comments included "you always pull your weight," "Excellent Job!", "Good input in strategizing and feedback," "Good Development of [local's] leadership," "nurturing," and "[o]ne of your greatest strengths is . . . your willingness to go the extra mile - help out when you're needed."

On May 10, 1999, INA terminated Polk-Henderson. The following day, INA offered her a different position subject to a probation-like work plan with bi-weekly evaluations for a minimum of two months. After plaintiff turned down this offer, INA reassigned most of her former duties to other individuals, some of whom were new employees.

---

[1] On the performance evaluations, a rating of 5 means "Outstanding - Performance far exceeds expectations and standards with minimal supervision." A rating of 4 means "Excellent - Performance consistently above expectations and standards with minimal supervision." A rating of 3 means "Satisfactory - Performance meets expectations and standards on a regular basis."

3

Race Discrimination under Title VII

Title VII makes it illegal for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Because Polk-Henderson admits that she has no direct evidence, she must rely on the three-step burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), to avoid summary judgment. Under this method, she must first establish a prima facie case of race discrimination by showing that: (1) she was a member of a protected class; (2) she was qualified for the position, i.e., she met INA's legitimate work expectations; (3) she was discharged; and (4) others, similarly situated but not of the protected class, were treated more favorably. *See Johnson v. Zema Systems Corp.*, 170 F.3d 734, 742 (7th Cir. 1999). If established, the prima facie elements raise a rebuttable presumption of discrimination. *See Cianci v. Pettibone*, 152 F.3d 723, 726 (7th Cir. 1998); *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 149 (7th Cir. 1996). The burden of production, not proof, then shifts to INA for purposes of articulating a legitimate, nondiscriminating reason for its actions. *See Our Lady of the Resurrection*, 77 F.3d at 149. If INA satisfies its burden of production, "the *McDonnell Douglas* evidence forcing scheme falls out of the case" and Polk-Henderson must present enough evidence showing a genuine issue of material fact "that the true reason was a discriminatory one, just as if there had never been *McDonnell Douglas*." *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997). In other words, Polk-Henderson would then have to present evidence showing that INA's articulated reason for terminating her was phony, a mere pretext for discrimination. *See Cianci*, 152 F.3d at 726; *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997).

4

Polk-Henderson is a member of a protected class under Title VII, but INA argues that the plaintiff fails to satisfy each of the other three elements she is required to show. INA first argues that Polk-Henderson fails to show that she met INA's legitimate work expectations. In addressing this issue, the court's focus is whether Polk-Henderson was meeting INA's legitimate expectations at the time of her discharge. *See Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445, 453 (7th Cir. 1998). Here, Polk-Henderson received ratings mostly between 3 and 4 on all her work evaluations, indicating that her performance fell somewhere between Satisfactory and Excellence. Furthermore, Hayward's written comments on the most recent evaluation indicate that Polk-Henderson was meeting, if not exceeding, INA's expectations. As in *Johnson v. Zema Systems Corp.*, 170 F.3d at 743, in which the plaintiff's positive employment evaluations indicated that the plaintiff met the employer's legitimate work expectations, Polk-Henderson has suggested that she met INA's legitimate work expectations.

INA next argues that Polk-Henderson fails to show that she has suffered any adverse employment action. The Seventh Circuit has defined adverse employment actions to broadly include "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment" or "limit[ing], segregat[ing], or classify[ing] . . . employees . . . in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." *McDonnell v. Cisneros*, 84 F.3d 256, 258-9 (7th Cir. 1996) (quoting 42 U.S.C. § 2000(a)(1)-(2)). An employee can suffer adverse employment action without losing her job entirely. Here, even though INA offered her "reinstatement" one day after terminating her, INA's offer to reinstate her to a different job subject to new conditions constitutes an adverse employment action.

Finally, INA argues that Polk-Henderson fails to show that similarly situated employees were treated more favorably. Polk-Henderson points to INA's treatment of Maria Soma to satisfy this element of the test. Plaintiff has sufficiently suggested that she and Soma are similarly situated. Both shared the same partial job title of "Labor Specialist" (probably reflecting similar job responsibilities); both were hired within approximately thirteen months of each; both were hired at the same step on the INA salary schedule; and both had comparable job duties in terms of working with existing bargaining units and organizing new ones. The fact that Soma had previously worked as an independent contractor for INA and had five years of community organizing experience prior to being hired by INA is irrelevant. At the time of plaintiff's discharge, their situations were similar enough for purposes of plaintiff's lawsuit. Furthermore, the fact that Soma is a member of another racial minority group is equally irrelevant and does not bar Polk-Henderson from using INA's treatment of Soma as an example of a similarly situated employee being treated more favorably. *See Johnson v. Zema Systems Corp.*, 170 F.3d at 745. As far as INA treating Soma more favorably, Polk-Henderson meets this burden. Soma may have received orientation and mentoring not given to Polk-Henderson, may have received her yearly pay increase before Polk-Henderson did, and, most importantly, was not terminated.

Because Polk-Henderson carries her initial prima facial burden, the next step is to determine whether INA has produced a legitimate, non-discriminatory reason for its termination of Polk-Henderson. INA meets this burden by producing Polk-Henderson's unsatisfactory job performance as its reason. Not only did INA receive at least two complaints from union members regarding plaintiff's performance, but Hayward testifies that Polk-Henderson failed at

her job and that this performance demonstrated that she did not possess the requisite skills. Hayward also claims that his evaluation results for Polk-Henderson were "below average, based upon [his] evaluation criteria which includes the highest score of 5 for those performing their duties and 2-3 for those not satisfactorily performing their job duties" and indicate that she "did not satisfactorily perform her required job duties."

It is ultimately irrelevant whether INA meets its burden, however, because Polk-Henderson has produced evidence suggesting that the INA's proffered reason was pretextual. To establish pretext, she may show that: (1) the proffered reasons for terminating her had no basis in fact; (2) the proffered reasons did not actually motivate her termination; or (3) the reasons were insufficient to motivate her termination. *See Biolchini v. General Elec. Co.*, 167 F.3d 1151, 1154 (7th Cir. 1999). "The pretext inquiry focuses on the honesty - not the accuracy - of the employer's stated reason for the termination." *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997). Polk-Henderson sufficiently questions the honesty of INA's proffered reason for terminating her. In contrast to her affidavit statements regarding poor performance evaluations of Polk-Henderson, Hayward consistently gave the plaintiff positive employee evaluation scores and comments indicating that she was meeting, if not exceeding, INA's expectations. In the end, summary judgment on this claim in favor of the defendant is not appropriate.

Race Discrimination under 42 U.S.C. §1981

Section 1981 of Title 42 bars all racial discrimination within the context of "making and enforcing contracts." 42 U.S.C. §1981(b). As with Title VII, a plaintiff may meet her burden of proof in an action under §1981 by offering direct or indirect proof of discriminatory intent.

7

*Sample v. Aldi Inc.*, 61 F.3d 544, 547 (7th Cir. 1995). "Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 940 (7th Cir. 1996). Based on the denial of summary judgment on plaintiff's §2000e-2 race discrimination claim, defendant's motion for summary judgment on this claim is similarly denied. Polk-Henderson sufficiently questions the honesty of INA's proffered reason for terminating her, and thus summary judgment is not appropriate.

Retaliation Discharge

Title VII also makes it unlawful for an employer to discriminate against any employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). As with a race discrimination claim, a plaintiff may prove a retaliatory discharge claim by presenting direct evidence of an illegal motive or by using the indirect method established in *McDonnell Douglas*. To establish a prima facie case of retaliation, a plaintiff must now show that after filing a discrimination charge against her employer, only she, and not any similarly situated employee who did not file a charge, was subjected to adverse employment action even though she was performing her job in a satisfactory manner. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir.), *cert. denied*, 71 USLW 3093 (2002). A plaintiff no longer needs to show "even an attenuated causal link" between opposing discrimination and suffering adverse employment actions. *Id.*

Here, plaintiff sufficiently makes a prima facie case of retaliation. First, plaintiff filed a formal grievance regarding INA's failure to give her her yearly raise and lodged several complaints to her supervisors regarding apparent discrimination at UIC and St. Joseph. INA asserts that the plaintiff cannot establish that her opposition was directed at a practice in violation of Title VII, but § 2000e-3 does not require that the challenged employment practice actually violate Title VII. It is sufficient if the plaintiff has a reasonable belief that there is a Title VII violation. *See Collins v. State of Illinois*, 830 F.2d 692, 702 (7th Cir. 1987); *Rucker v. Higher Educational Aids Board*, 669 F.2d 1179, 1182 (7th Cir. 1982). Here, plaintiff believed that she was a victim of racial discrimination at the hands of union members at UIC and St. Joseph, and her belief that this treatment constituted a violation of Title VII is reasonable. As discussed above, plaintiff also suffered adverse employment action in terms of being terminated and subsequently offered a different job subject to new conditions. Third, plaintiff has suggested that no other similarly situated employee who did not oppose discrimination was subject to adverse employment action. Finally, plaintiff has suggested that she was performing her job in a satisfactory manner as evidenced by her consistently positive employee evaluations. Therefore, Polk-Henderson carries her initial prima facial burden.

Once again, the next step is to determine whether INA has produced a legitimate, non-discriminatory reason for its termination of Polk-Henderson. INA has done this, but it is ultimately irrelevant because Polk-Henderson has produced evidence suggesting that INA's proffered reason was pretextual. Her consistently positive employee evaluation scores and comments indicate that she was meeting, if not exceeding INA's expectations and sufficiently

question the honesty of INA's proffered reason of terminating her for poor job performance. Summary judgment is therefore not appropriate.

For the foregoing reasons, defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: OCT 1 1 2002